**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAYSI LENT,**

                                        **Plaintiff,**

        **vs.**                                        **5:13-CV-942**
                                                        **(MAD/ATB)**

**CCNH, INC. d/b/a CORTLAND CARE**
**CENTER,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**THE LAMA LAW FIRM, LLP**               **LUCIANO L. LAMA, ESQ.**
2343 North Triphammer Road
Ithaca, New York 14850
Attorneys for Plaintiff

**CCNH, INC.**
193 Clinton Avenue
Cortland, New York


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.  INTRODUCTION**

On August 8, 2013, Plaintiff filed this action alleging that Defendant CCNH, Inc.

("CCNH") discriminated against her in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), New York Executive Law § 296 (the New York Human Rights Law ("NYHRL")),

and New York Civil Rights Law ("NYCRL") § 40-c and intentionally inflicted emotional distress

on her, by virtue of CCNH's failure to take action when Plaintiff notified it that one of its

employees, Jeffrey S. Greene,[1] harassed, sexually abused, and raped her.  *See* Dkt. No. 1 at 1-11

---

[1]  On December 12, 2013, the Court granted Plaintiff's notice of voluntary dismissal of

(continued...)

("Complaint").  CCNH has failed to answer or move against the Complaint, or to otherwise appear in this action.  Currently before the Court is Plaintiff's unopposed amended motion for default judgment.  *See* Dkt. No. 29.

## II. BACKGROUND

Plaintiff alleges that between October 24, 2007 and January of 2009, while both she and Greene were employed by CCNH, Greene cornered her on a daily basis in a locked closet on CCNH's premises and forced her to touch his genitals, perform oral sex, and engage in sexual intercourse.  Complaint at ¶¶ 10-12.  At the time the sexual abuse began, Plaintiff was sixteen years old.  *Id.* at ¶ 13.  On January 22, 2009, Plaintiff was admitted to Cortland Regional Medical Center after a suicide attempt following an argument with Mr. Greene.  *Id.* at ¶ 15; Dkt. No. 1 at 13-16.  The Cortland Regional Medical Center Emergency Department Report states as follows:

> Kaysi is a 17-year-old female brought into the Emergency Department by her mother with the chief complaint of overdose. The patient was brought in by her mother after she told her mother she took 12 ibuprofen of 200 mg.  The patient states she took these about an hour prior to coming into the Emergency Department.  She denies any nausea or vomiting.  No pain.  The patient states that she was feeling at the time that she wanted to hurt herself.  She states she does not feel this way at this time.  The patient did have an argument with her current boyfriend who is 43-years-old and a coworker at a local nursing home.  The patient's mother states that she only found out about this today as the patient told her mother that her boyfriend had broken up with her.  She states she did not know that this man was her daughter's boyfriend.  The patient states that she knows the age of consent is 17 in the state of New York and "so they cannot get in trouble for this."  She was very concerned though that this man would get into trouble for this relationship with her and states this is why she took the ibuprofen.

Dkt. No. 1 at 15.

---

[1](...continued)
Defendant Jeffrey S. Greene, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  Dkt. No. 26.  The case caption has been amended accordingly.

Thereafter, on January 28, 2009, Plaintiff's mother informed Plaintiff's supervisor at CCNH, Sharon Breed, of the sexual assault allegations made by Plaintiff against Greene. Complaint at ¶ 16. Breed informed Plaintiff that she did not believe the accusations, refused to transfer Plaintiff to a shift that was different from Greene's, and advised Plaintiff not to file a report with CCNH's human resources department regarding her allegations. *Id.* at ¶ 17. On February 15, 2009, Greene was transferred to a different shift for reasons other than Plaintiff's request. *Id.* at ¶ 18. In May of 2009, Breed informed Plaintiff that Greene would be transferred back to Plaintiff's shift and that, if Plaintiff was not agreeable to this, Plaintiff should quit her job. *Id.* at ¶¶ 19-20. On May 15, 2009, three days before Greene was scheduled to be transferred back to Plaintiff's shift, Plaintiff resigned her position. *Id.* at ¶ 21. At some point in 2009, Greene was indicted by the Grand Jury of Cortland County on three counts of Criminal Sexual Act in the Third Degree, three counts of Rape in the Third Degree, and one count of Endangering the Welfare of a Child. *Id.* at ¶ 22; Dkt. No. 1 at 29-35. On April 26, 2010, Greene was convicted of two counts of Endangering the Welfare of a Child and sentenced to three years probation. Complaint at ¶ 23; Dkt. No. 1 at 37-39.

Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination under Title VII. Complaint at ¶ 25. In a June 6, 2013 letter, the EEOC found that Plaintiff "was subject to a hostile work environment in that she was sexually harassed and constructively discharged after complaining about the harassment/hostile work environment." Complaint at ¶ 26; Dkt. No. 1 at 96-99.

Plaintiff commenced this action on August 8, 2013 by filing a Complaint against CCNH and Greene. *See* Dkt. No. 1. Plaintiff completed service of the Summons and Complaint on

CCNH on September 25, 2013. *See* Dkt. Nos. 5, 7. To date, CCNH has not filed an answer or motion in response to the Complaint.

On October 18, 2013, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiff requested an entry of default against CCNH. *See* Dkt. No. 10. On October 21, 2013, the Clerk of the Court entered a default against CCNH. *See* Dkt. No. 11. On November 20, 2013, Plaintiff filed her initial motion seeking a default judgment against CCNH pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 18. On September 8, 2014, the Court issued an order denying without prejudice Plaintiff's initial motion for default judgment and ordered Plaintiff to file a certificate of service demonstrating that Plaintiff's motion had been served on CCNH. *See* Dkt. No. 28. The Court also notified Plaintiff that the record as of the date of the Court's Order was insufficient to permit a determination on damages without a hearing, should the Court grant Plaintiff's motion for default judgment. *Id.* at 2 n.2. On September 11, 2014, Plaintiff filed an amended motion for default judgment, which included a certificate of service attesting that the motion had been served on CCNH. *See* Dkt. Nos. 29, 30, 31, 32, 33. CCNH has not responded to the motion.

## III. DISCUSSION

### A. Entry of default judgment

"Rule 55(b) of the Federal Rules of Civil Procedure provides that when a party moves for judgment against an adverse party who has failed to answer or otherwise appear in the action, the court may enter judgment against the defaulting party." *Coated Fabrics Co. v. Mirle Corp.*, No. 06-CV-5415, 2008 WL 163598, *4 (E.D.N.Y. Jan. 16, 2008) (citing Fed. R. Civ. P. 55(b)). "That rule, in tandem with the Northern District of New York Local Rule 55.2, sets forth certain procedural prerequisites that must be met before a default judgment may be entered . . . ." *Pert*

*35, Inc. v. Amari Aviation Ltd.*, No. 09-CV-0448, 2010 WL 1257949, *3 (N.D.N.Y. Mar. 5, 2010). More specifically, in order to grant a plaintiff's motion for default judgment, the plaintiff must satisfy the following requirements: "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service." *Id.* (citing Fed. R. Civ. P. 55(b)(2); N.Y.N.D. L.R. 55.1 and 55.2) (other citation omitted).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to damages." *Coated Fabrics Co.*, 2008 WL 163598, at *4 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to enter a default judgment, the Second Circuit has cautioned that defaults are not favored, and "doubts are to be resolved in favor of a trial on the merits." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (citations omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted). Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments "are generally disfavored." *Id.* at 95-96 (citations omitted). Accordingly, simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162

(S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

In considering a motion for default judgment, the Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment. *See Enron Oil Corp.*, 10 F.3d at 96; *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011) (citations omitted). Specifically, the court considers "(1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Rodriguez*, 784 F. Supp. 2d at 123 (quoting *Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02 Civ 9044, 2003 WL 1960584, *2 (S.D.N.Y. Apr. 25, 2003)). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

Here, Plaintiff has satisfied the procedural prerequisites for obtaining a default judgment. Plaintiff has properly served CCNH with the Complaint, obtained an entry of default, and provided an affidavit setting forth all of the requirements set forth above. *See* Dkt. No. 18-3. As such, the Court analyzes the three factors that guide a court's determination of whether to grant a default judgment below.

## B.    Willfulness

"When a defendant is continually and 'entirely unresponsive,' [the] defendant's failure to respond is considered willful." *Trs. of the Pavers & Rd. Builders Dist. Council Welfare Fund v. JREM Constr. Corp.*, No. 12-CV-3877, 2013 WL 618738, *3 (E.D.N.Y. Jan. 28, 2013) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, *2

(S.D.N.Y. Oct. 27, 2008)).  Thus, as to the first factor, the continual failure of CCNH to respond

to the Complaint sufficiently demonstrates willfulness.  *See E. Sav. Bank, FSB v. Beach*, No. 13-

CV-0341, 2014 WL 923151, *5 (E.D.N.Y. Mar. 10, 2014); *Indymac Bank, F.S.B. v. Nat'l*

*Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, *1 (S.D.N.Y. Dec. 20, 2007).

Plaintiff submitted an Affidavit of Service demonstrating that the Summons and Complaint were

served on CCNH through the New York State Department of State on September 10, 2013, and

that the Summons and Complaint were sent by first class mail to CCNH on September 25, 2013.

*See* Dkt. Nos. 32-2, 32-3.  CCNH neither answered nor responded in any way to the Complaint,

nor did it request an extension of time to respond, and the time to do so has expired.  In addition,

Plaintiff has provided the Court with a Certificate of Service indicating that CCNH was served

with the Notice of Motion for Default Judgment and the associated exhibits.  *See* Dkt. No. 33.

CCNH did not respond to the motion.  There is no indication that CCNH's failure to respond to

the Complaint, as well as the Motion for Default Judgment, despite being properly served, was

anything but deliberate.

## C.    Meritorious Defense

Turning to the next factor, the Court must consider whether CCNH has a meritorious

defense.  Where a defendant fails to answer the complaint, courts are unable to make a

determination whether the defendant has a meritorious defense.  *See Empire State Carpenters*

*Welfare Fund v. Darken Architectural Wood*, No. CV 11-46, 2012 WL 194075, *3 (E.D.N.Y. Jan.

17, 2012).  "[A]ccordingly, this factor weighs in favor of granting a default judgment."  *Joseph v.*

*HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) (citations omitted).  Although

CCNH's default constitutes an admission of all the factual allegations in the Complaint as they

relate to liability, Plaintiff must nevertheless demonstrate that the uncontested allegations set forth

valid claims. *See Said v. SBS Elecs., Inc.*, No. CV 08-3067, 2010 WL 1265186, *2 (E.D.N.Y. Feb. 24, 2010) ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."). The Court will examine each of Plaintiff's claims in turn.

### 1.    Title VII & NYHRL Claims

As an initial matter, the Court notes that the same standard is used when analyzing Title VII and NYSHRL claims. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003). Discrimination claims under Title VII are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). It is the plaintiff's burden to establish a prima facie case of discrimination. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001); *Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 346 (W.D.N.Y. 2012). A prima facie case of discrimination consists of four elements the plaintiff must allege: "(1) she falls within a protected class, (2) she was performing her duties satisfactorily, (3) she was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Lewis*, 907 F. Supp. 2d at 346. Once established, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Byrnie*, 243 F.3d at 102; *Lewis*, 907 F. Supp. 2d at 346. Based on the allegations in the Complaint, Plaintiff asserts claims under Title VII for hostile work environment discrimination and retaliation.

### a.    *Hostile Work Environment*

8

Title VII makes it "'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent "'to strike at the entire spectrum of disparate treatment of men and women'" in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (quoting *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)). In order to demonstrate a hostile work environment, a plaintiff must establish: "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Harris*, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.").

The inquiry has objective and subjective elements: "'the misconduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano*, 294 F.3d at 374). Factors such as frequency of the discriminatory conduct, its severity, and whether it humiliates or physically threatens an employee or unreasonably interferes with an employee's work performance are used to determine whether an environment is sufficiently hostile. *Id.* (citing *Harris*, 510 U.S. at 23). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in

order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Finally, it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Id.* (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

In this case, Plaintiff alleges that her co-worker, Mr. Greene, harassed, sexually abused, and raped her over a nearly two-year period. The Court accepts these allegations from the Complaint and Exhibits as true for the purposes of this motion for default judgment. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. When Plaintiff informed her supervisor of Mr. Greene's conduct, her supervisor stated that she did not believe the accusations, refused to transfer Plaintiff to another shift, and advised Plaintiff not to file a report with CCNH's human resources department. Thereafter, Plaintiff's supervisor informed Plaintiff that if she did not want to work on the same shift as Mr. Greene, she should quit her job. Notably, the EEOC determined after investigation that Plaintiff was subject to a hostile work environment. As a result, Plaintiff resigned her position at CCNH. Such actions go far beyond merely offensive conduct and are sufficient for a reasonable person to find her work environment abusive and hostile in violation of Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability."), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Plaintiff subjectively perceived her work environment to be hostile, as evidenced by her complaints about the unlawful behavior. Further, by complaining about her treatment in the workplace to her supervisor, Plaintiff made it sufficiently clear that Mr. Greene's behavior was negatively affecting her work environment.

Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer. *Alfano*, 294 F.3d at 373. "The standards for assessing vicarious liability differ depending on the status of the alleged harasser." *Brown v. City of N.Y.*, No. 11 Civ. 2915, 2013 WL 3789091, *12 (S.D.N.Y. July 19, 2013). When the alleged harasser "is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). By contrast, if the alleged harasser is a co-worker, "an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Perry*, 115 F.3d at 149 (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994)).

Here, Plaintiff has alleged that her supervisor at CCNH was made aware of the harassment but did nothing about it. Although an employer may raise an affirmative defense if the employer exercised reasonable care to prevent and correct any harassing behavior and the employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer, such a defense is unavailable when a tangible employment action is taken. *Ellerth*, 524 U.S. at 765; *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 278 (2009). This defense is unavailable in these circumstances because Plaintiff was constructively discharged after complaining about Mr. Greene's conduct when her supervisor informed her to quit if she did not desire to work the same shift as Mr. Greene. Based on each of the foregoing factors, Plaintiff has sufficiently stated the elements of a valid claim for hostile work environment under Title VII.

### b.      Retaliation

The clause in the section of Title VII which addresses retaliation states that it is "'an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." *Crawford*, 555 U.S. at 274 (quoting 42 U.S.C. § 2000e–3(a)). To establish a prima facie case for retaliation, a plaintiff must show that "'(1) [the employee] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

"A plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012) (citations omitted). "[I]n order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII." *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (citations omitted). Informal protests of discrimination, such as "'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges'" include recognized forms of protected activity. *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)). Here, Plaintiff was engaged in a protected activity when she complained to her supervisor about Mr. Greene's discriminatory and harassing behavior. Further, Plaintiff's complaint to her supervisor is sufficient to satisfy the "general corporate knowledge" standard for the knowledge

element of a retaliation claim.  *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).

As to the third element in the prima facie case for retaliation, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 207 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Unlike a disparate treatment claim under Title VII, a retaliation claim "'is *not* limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *White*, 548 U.S. at 64).  "'[T]here are no bright-line rules' with respect to what constitutes an adverse employment action for purposes of a retaliation claim, and therefore 'courts must pore over each case to determine whether the challenged employment action reaches the level of "adverse."'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)).

Plaintiff alleges that she was constructively discharged of her employment.  "Constructive discharge is considered an adverse employment action sufficient to support a retaliation claim." *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 194 (E.D.N.Y. 2013).  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry*, 336 F.3d at 151-52 (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir.1998)).  Constructive discharge "requires a 'further showing' beyond what is necessary to establish a hostile work environment or retaliation claim, such that resignation qualified as a fitting

response." *Bundschuh*, 914 F. Supp. 2d at 408 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

"[W]orking conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Terry*, 336 F.3d at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)). "An employee need not show that an employer acted with the specific intent to cause the employee to resign; rather, she need only show that the employer's actions were 'deliberate and not merely negligent or ineffective.'" *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 309 (N.D.N.Y. 2013) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 229-30 (2d Cir. 2004)); *see also Farren v. Shaw Envtl., Inc.*, 852 F. Supp. 2d 352, 362 (W.D.N.Y. 2012) ("If a plaintiff cannot show specific intent on the part of the employer, he or she is required to at least demonstrate that an employer[']s actions were deliberate, not merely negligent or ineffective." (citations omitted)).

As to causation, Title VII is violated when a retaliatory motive plays a part in the adverse employment action, even if it was not the sole cause for the action and objectively valid reasons for the discharge exist. *Hicks v. Baines*, 593 F.3d 159, 164-65 (2d Cir. 2010).

Here, Plaintiff alleges that she complained about Mr. Greene's sexually abusive conduct to her supervisor, who informed her to quit if she did not want to continue working with Mr. Greene. As such, the Complaint adequately alleges constructive discharge. As noted above, the EEOC also found that Plaintiff had been constructively discharged. Finally, the Complaint also sufficiently alleges, both directly and indirectly, a causal connection between the protected activity and adverse action. Thus, Plaintiff has sufficiently alleged the elements for a valid claim of retaliation under Title VII.

Furthermore, because the same standard is used to evaluate Title VII and NYSHR claims, Plaintiff has sufficiently alleged violations of NYSHR § 296.[2]

### 2. NYCRL § 40-c

Section 40-c of the NYCRL provides, in relevant part, that "[n]o person shall, because of . . . sex . . . be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state." N.Y. Civ. Rights Law § 40-c. "A valid cause of action based on a violation of section 296 of the New York Executive Law exposes the defendant to civil penalties under Section 40–c of the New York Civil Rights Law, recoverable by the person aggrieved." *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) (citing N.Y. Civ. Rights Law §§ 40-c, 40-d; *Hart v. Sullivan*, 84 A.D.2d 865, 866 (3rd Dep't 1981)). "Facts sufficient to sustain a cause of action under New York Executive Law section 296 will support a cause of action under section 40–c of the Civil Rights Law." *Id.* (citing *People v. Hamilton*, 125 A.D.2d 1000, 1001 (4th Dep't 1986); *Sampler v. Univ. of Rochester*, 144 A.D.2d 940, 941 (4th Dep't 1988)). Accordingly, as Plaintiff has stated valid

---

[2] The Court notes that Plaintiff's claims under the NYSHRL were timely filed, as the three-year statute of limitations was tolled during the pendency of Plaintiff's complaint with the EEOC. *See Martinez-Tolentino v. Buffalo State Coll.*, 277 A.D.2d 899, 899 (4th Dep't 2000). While the exact dates pertaining to Plaintiff's EEOC complaint are unclear, it appears that Plaintiff timely filed her complaint with the EEOC at some point prior to April 27, 2010, less than one year after the alleged discriminatory acts. *See* Dkt. No. 1 at 56 (describing EEOC hearing on Plaintiff's complaint held on that date). The statute of limitations was then tolled while Plaintiff's EEOC complaint was pending, until June 6, 2013, when the EEOC issued its notice of right to sue. *See* Dkt. No. 1 at 96-99. Plaintiff's filing of her claim on August 8, 2013 was therefore well within the three-year statute of limitations. Furthermore, there is no evidence that Plaintiff's EEOC complaint was untimely, and Plaintiff filed her Title VII claims within ninety days of receiving the EEOC's notice of right to sue.

claims under section 296 of the NYHRL, Plaintiff's claims are sufficient to support a cause of action under section 40-c of the NYCRL.

However, the statute of limitations for claims brought under NYCRL § 40-c is three years from the date of injury caused by discrimination. *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 148 (N.D.N.Y. 2011) (citation omitted). CCNH's alleged discriminatory conduct as to Plaintiff occurred no later than May 15, 2009, when Plaintiff resigned her position with CCNH. *See* Complaint at ¶ 21. Thus, in the absence of any tolling, the statute of limitations on Plaintiff's NYCRL claim expired on May 15, 2012. New York Civil Practice Law and Rules § 208 provides for tolling of the statute of limitations during a period of infancy. *See* N.Y.C.P.L.R. § 208. Plaintiff's exact date of birth is unclear from her filings, but it is clear that she was born in 1991. *See, e.g.*, Dkt. No. 1 at 13, 15. Thus, even assuming Plaintiff's date of birth is the latest possible date of December 31, 1991, the statute of limitations on her NYCRL claim ran no later than December 31, 2012, three years after her eighteenth birthday. *See* N.Y.C.P.L.R. § 208; *Niles v. Nelson*, 72 F. Supp. 2d 13, 20 (N.D.N.Y. 1999) ("[I]f the toll [for infancy under § 208] applies, the statute of limitations did not begin to run until [the plaintiff] reached age eighteen."). Plaintiff's filing of her claim on August 8, 2013 is clearly outside the statute of limitations, even giving Plaintiff the benefit of all potentially applicable tolling.[3] The Court therefore denies Plaintiff's motion for default judgment as to this claim. *See Waldron v. Milana*, No. 5:10-CV-0065, 2013 WL 2445047 (N.D.N.Y. June 5, 2013) (denying a motion for default judgment on

---

[3] The Court has identified no precedent establishing that a claim under NYCRL § 40-c is tolled while a plaintiff has an EEOC complaint pending. In the absence of any authority for tolling the statute of limitations, the Court is constrained from extending Plaintiff's time to file her claim. *See Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 669 (S.D.N.Y. 2007) ("New York law provides for the tolling of statutes of limitation only in certain narrowly-defined circumstances . . . ."); *id.* at 669 n.10 ("New York has codified its statutes of limitations and the circumstances under which they may be tolled." (quotation omitted)).

claims barred by the applicable statute of limitations and explaining that "district courts may dismiss an action sua sponte on statute of limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'" (quoting *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011)).

### 3.    Intentional Infliction of Emotional Distress Claim

In order to state a claim for intentional infliction of emotional distress under New York law, the Plaintiff must plead: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; '(3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" *Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 550 (2d Cir. 2009) (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)); *see also Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993) (stating the same).   New York law sets a very high threshold for extreme and outrageous conduct.   "The conduct at issue 'must transcend the bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Margrabe*, 353 Fed. Appx. at 550 (quoting *Klinge v. Ithaca Coll.*, 235 A.D.2d 724, 727 (3d Dept. 1997)).   To survive a motion to dismiss, "[t]he conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant." *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00CIV5433, 2001 WL 180055, *2 (S.D.N.Y. Feb. 22, 2001).   A claim for the intentional infliction of emotion distress is "rigorous, and difficult to satisfy." *Howell*, 81 N.Y.2d at 122 (citations omitted).

Pursuant to New York Civil Practice Law and Rules § 215, the statute of limitations for a cause of action for the intentional infliction of emotional distress is one year.   N.Y.C.P.L.R. §

215(3); *Goldner v. Sullivan, Gough, Skipworth, Summers & Smith*, 105 A.D.2d 1149, 1151 (4th Dep't 1984). Plaintiff's intentional infliction of emotional distress claim against CCNH centers on her supervisor's response to her complaints against Mr. Greene. *See* Complaint at ¶¶ 45-52. Accordingly, her claim accrued at the latest by May 15, 2009, the date she resigned her position, and the statute of limitations expired on May 15, 2010. As the Court discussed above, the statute of limitations was tolled during Plaintiff's infancy, and the latest possible date for Plaintiff's date of birth is December 31, 1991. As such, the statute of limitations on her intentional tort claim ran no later than December 31, 2010, one year after her eighteenth birthday. Furthermore, the Second Circuit has held that as a matter of federal law, "filing an EEOC charge does not toll the limitations period for state-law tort claims, even if those claims arise out of the same factual circumstances as the discrimination alleged in the EEOC charge." *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014). Thus, Plaintiff's intentional infliction of emotional distress claim filed on August 8, 2013 is clearly untimely, and the Court denies Plaintiff's motion for default judgment on this claim.

### D. Prejudice

The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiff, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders*, 2003 WL 1960584, at *3). Without the entry of a default judgment, Plaintiff would be unable to recover for the claims adequately set forth in the Complaint. Since Plaintiff sufficiently made out claims under Title VII and NYHRL for hostile

work environment and retaliation, a default judgment is warranted on these claims. However, Plaintiff cannot prevail on her NYCRL and intentional infliction of emotional distress claims.

For the foregoing reasons, Plaintiff is entitled to default judgment on liability on her Title VII and NYHRL claims.

### E. Damages

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound*, 973 F.2d at 158. Therefore, once a party's default as to liability is established, a plaintiff still must prove damages. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008). "To award damages, it is not necessary for a court to hold a hearing; instead, a court may rely upon affidavits and documentary evidence." *Id.* (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)).

For instance, in *Fustok*, the Second Circuit upheld an award of damages on a default judgment against a third-party defendant where "the District Court relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record, gained during four years of involvement with the litigation, including his role as presiding judge at trial." 873 F.2d at 40. The Second Circuit noted that "the nature and value of [the plaintiff's] claim were 'fully aired' at the trial" between the plaintiff and defendant. *Id.* Similarly,

in *Action S.A.*, the Second Circuit affirmed an award of compensatory damages on a default judgment after the district court "conducted a year-long inquest on damages involving volumes of affidavits and lengthy oral argument from the parties, and denied a subsequent defense request for a full evidentiary hearing."  951 F.2d at 508.

In the present matter, the Court alerted Plaintiff of the need to supplement the record to support her claims for damages in its September 8, 2014 Order.  *See* Dkt. No. 28 at 2 n.2. Nonetheless, as to damages, Plaintiff's amended motion for default judgment includes a one-page statement of amount due in default judgment, three-page attorney affirmation, and combined statement and invoice totaling $1,842.46 in costs and disbursements by Plaintiff's counsel that were included in her prior motion for default judgment.  *See* Dkt. Nos. 18-1, 18-2, 18-3, 29-1, 29-2, 29-3.  Plaintiff's submissions are plainly insufficient for the Court to ensure that there is a basis for the $1,250,000 in damages that Plaintiff seeks.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ("[T]he District Court . . . could not just accept [the plaintiff's] statement of the damages.  This did not satisfy the court's obligation to ensure that the damages were appropriate.").  As a result, the Court finds that it is inappropriate to award damages without first conducting an evidentiary hearing, at which Plaintiff must prove the quantum of damages she seeks.

## IV.  CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's amended motion for default judgment (Dkt. No. 29) is **GRANTED** as to liability on Plaintiff's Title VII and NYHRL claims and **DENIED** as to liability on Plaintiff's NYCRL and intentional infliction of emotional distress claims; and the Court further

**ORDERS** that Plaintiff's amended motion for default judgment is **RESERVED** as to damages pending the damages hearing discussed herein;[4] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 1, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] Plaintiff's counsel will be contacted to schedule a date for the damages hearing.