**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KAYSI LENT,**

                                 **Plaintiff,**

    vs.                                                      **5:13-CV-00942
                                                                     (MAD/ATB)**

**CCNH, INC. d/b/a CORTLAND CARE
CENTER,**

                                   **Defendant.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**THE LAMA LAW FIRM, LLP**              **LUCIANO L. LAMA, ESQ.**
2343 North Triphammer Road
Ithaca, New York 14850
Attorneys for Plaintiff

**CCNH, INC.**
193 Clinton Avenue
Cortland, New York


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff commenced this action on August 8, 2013, alleging that Defendant CCNH, Inc. ("CCNH") discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), New York Executive Law § 296 (the New York Human Rights Law ("NYHRL")), and New York Civil Rights Law ("NYCRL") § 40-c and intentionally inflicted emotional distress on her. *See* Dkt. No. 1 at 1-11. Despite being properly served with the summons and complaint, CCNH failed to answer Plaintiff's complaint or otherwise appear in this action. As a result, its default was entered on October 21, 2013. *See* Dkt. No. 11. On June 1, 2015, the Court granted Plaintiff default judgment on the issue of liability as to her Title VII and NYHRL claims. *See*

Dkt. No. 35. The Court reserved on the issue of damages and held an inquest hearing on July 1, 2015 to determine the amount of damages to be awarded against CCNH. *See* Dkt. Nos. 35, 41. The Court's determination on the issue of damages is as follows.

## II. BACKGROUND

### A.    Factual Background[1]

Beginning when Plaintiff was sixteen years old, forty-three year old Jeffrey S. Greene ("Greene") repeatedly cornered her, locked her in a closet on CCNH's premises, and forced her to touch his genitals, perform oral sex, and engage in sexual intercourse on a daily basis from October 24, 2007 until January of 2009. Dkt. No. 1 at ¶¶ 10-13. During this time, both Plaintiff and Greene were employed by CCNH. *Id.* at ¶¶ 10, 11. Following an argument with Greene, Plaintiff was admitted to Cortland Regional Medical Center after a suicide attempt on January 22, 2009. *Id.* at ¶¶ 13-15.

On January 28, 2009, Plaintiff's mother notified Plaintiff's supervisor at CCNH, Sharon Breed, of Greene's history of sexually assaulting Plaintiff. *Id.* at ¶ 16. Thereafter, Breed informed Plaintiff that the accusations against Greene were unfounded, refused to assign Plaintiff to a shift separate from Greene's, and advised Plaintiff not to file a report with CCNH's human resources department regarding the sexual assault. *Id.* at ¶ 17. On February 15, 2009, Greene was transferred to a different shift for reasons other that Plaintiff's complaints. *Id.* at ¶ 18. In early May of 2009, Breed informed Plaintiff that Greene would be transferred back to her shift

---

[1] The facts referenced in this section are those that are relevant to the determination of damages. The Court provides a more complete discussion of the underlying factual record and procedural history of the case in its June 1, 2015 Memorandum-Decision and Order. *See* Dkt. No. 35 at 2-4.

2

and that, if Plaintiff was not agreeable to this, she should quit her job. *Id.* at ¶¶ 19-20. Plaintiff resigned her position on May 15, 2009. *Id.* at ¶ 21.

**B.     Damages Inquest**

Plaintiff presented evidence as to the extent of her damages at an inquest hearing before the Court on July 1, 2015. *See* Dkt. No. 41. This hearing consisted of testimony from Plaintiff, Dr. Misty Ginicola, Plaintiff's counselor Patricia Wood, Plaintiff's parents Karen and Melvin Coit, and Plaintiff's boyfriend Collin Horak. *See id.* Defendant made no appearance at the hearing. *See id.* The relevant testimony from the hearing is set forth below.

### *1. Plaintiff Kaysi Lent*

Plaintiff testified that the sexual assaults underlying this case began when she was sixteen years old and continued for more than one year. Inquest Hearing Transcript dated July 1, 2015 ("T.") at 5. This abuse culminated in Plaintiff's attempted suicide by overdosing on ibuprofen in January of 2009. *Id.* at 6. Following her overdose, Plaintiff was admitted to Courtland Regional Medical Center and kept overnight for observation. *Id.* Thereafter, Plaintiff first sought counseling from Dr. Misty Ginicola, followed by treatment from Ms. Patricia Wood for approximately three or four years. *Id.* at 7, 8.

Plaintiff struggles with depression, anxiety, nightmares, and an inability to sleep. *Id.* at 9-10. She still suffers from nightmares nearly every night. *Id.* at 12. Further, Plaintiff finds it difficult to show and receive affection, especially with male family members. *Id.* at 9. In her free time, Plaintiff is able to drive her car, enjoys playing piano, and occasionally goes to movies with her family. *Id.* at 12. She currently lives in her own apartment in the same building as her family. *Id.*

Plaintiff testified that she has had difficulty seeking employment because of her lack of trust of strangers and employers. *Id.* at 8. After leaving CCNH, Plaintiff obtained a position at the Quality Inn Hotel from 2011 until 2012. *Id.* at 28. She quit this job because she was afraid to report the misconduct of her coworkers to her supervisors. *Id.* at 29. After the Quality Inn, Plaintiff was briefly employed by the Shoe Department but quit after two weeks because she did not trust her boss. *Id.* Currently, Plaintiff is employed as a front desk attendant at the Country Inn & Suites, where she has worked since 2013 making $10 per hour. *Id.* at 11, 29.

### *2. Dr. Misty Ginicola*

Dr. Ginicola is a licensed professional counselor with her Ph.D. in developmental psychology. Damage Inquest Plaintiff's Exhibit ("Pl. Exh.") 4 at 1, 2. Dr. Ginicola was contacted by Plaintiff's mother after Plaintiff attempted suicide in 2009. T. at 15. After several meetings, Plaintiff was able to speak to Dr. Ginicola about her emotions and the events that occurred at CCNH. However, Plaintiff has not attended a counseling session with Dr. Ginicola since April of 2009. *See* Pl. Exh. 2.

In an April 23, 2010 report, Dr. Ginicola stated that "[Plaintiff] was experiencing both Post Traumatic Stress Disorder ["PTSD"] and a Major Depressive Episode." Pl. Exh. 3 at 1. Due to the symptoms of Plaintiff's PTSD, "she has experienced clinically significant stress and impairment in her relationships, at work and in terms of her own psychological functioning." *Id.* at 2. Plaintiff's symptoms from her major depressive episode included "depressed and irritable mood, diminished interest in formerly pleasurable activities, trouble sleeping, fatigue and loss of energy, feelings of hopelessness, suicidal ideations and attempts, as well as a diminished ability to concentrate." *Id.* With respect to CCNH's responsibility for Plaintiff's injuries, "[t]he inability of [CCNH] to protect an underage worker from being assaulted on cite [sic] certainly aided in

4

[Plaintiff's] initial development of PTSD and a Major Depressive Disorder." *Id.* at 3.  Further, "[t]he reactions of those representing [CCNH] further traumatized [Plaintiff] as they caused her to feel fear, helplessness and horror . . . ." *Id.*  As a result of her medical conditions, "[Plaintiff] can find ways to cope and live a fulfilling life, but not without constant effort, [and] medical and psychological treatment." *Id.* at 2.  Dr. Ginicola's final conclusion in her April 23, 2010 report was "that [Plaintiff] was physically, psychologically, emotionally, socially, neurologically, occupationally and financially harmed by [CCNH's] actions.  This harm will undoubtedly persist for years into her adulthood and will put her at risk for future complications [over] the course of her life." *Id.* at 3.

Dr. Ginicola further testified that Plaintiff will likely have long-term conditions with a lifelong susceptibility to resurgent symptoms of the PTSD.  T. at 18-19.  The triggers of such symptoms would likely include relationships with men, sexual relationships, and employment. *Id.* at 19-20.  Even with no triggers, Dr. Ginicola opined that Plaintiff likely needs an additional three or four years of counseling at two sessions per month and that her nightmares could continue for another ten years.  *Id.* at 26-27.  While Plaintiff was not charged for her counseling sessions with Dr. Ginicola, her rates in 2009 were approximately $100 per hour and she currently charges between $125 and $150 per hour.  *Id.* at 27.

### *3. Patricia Wood*

Ms. Wood has her master's degree in psychotherapy and counseling with a focus on trauma and has been practicing since 2004.  *Id.* at 30.  Starting on July 8, 2009, Ms. Wood saw Plaintiff on a weekly basis for approximately three years.  *Id.* at 31, 32.  Ms. Wood did not see Plaintiff from 2012 until 2015, and had only one visit with her in the month prior to the instant hearing.  *Id.* at 31.  Ms. Wood testified that Plaintiff had no reported history of depression,

5

anxiety, or PTSD prior to the incident with CCNH. *Id.* at 37. However, she could not give an opinion as to Plaintiff's current need for counseling or treatment. *Id.* at 38. The current rate for a counseling session with someone of Ms. Wood's qualifications is between $50 to $90 per hour. *Id.*

### *4. Karen Coit*

Plaintiff's mother, Karen Coit, testified that Plaintiff was a shy girl who was helpful to others, was easy going and extremely trusting, and had several friends around home and school prior to her employment with CCNH. *Id.* at 40. However, Plaintiff had started isolating herself from her family and friends after she began working at CCNH. *Id.* at 41. After her suicide attempt, Plaintiff continued to isolate herself, became more nervous and tense, and would lose her temper and cry regularly. *Id.* at 43. Mrs. Coit found Plaintiff crying in the fetal position on more than one occasion. *Id.* Plaintiff took several years to stop isolating herself, but has since become more engaged with her family. *Id.* at 43-44.

Mrs. Coit stated that Plaintiff still has days where she does not want to be around anyone, and that she has noticeably distanced herself from her male family members while becoming more attached to her mother. *Id.* at 44, 45. Mrs. Coit indicated that Plaintiff completed her high school home schooling, obtained an associates degree from Tompkins Community College, and received her bachelor's degree in social work from S.U.N.Y. Cortland in 2014. *Id.* at 46.

### *5. Melvin Coit*

Plaintiff's father, Melvin Coit, testified that Plaintiff was a loving, affectionate, and playful child prior to her employment at CCNH. *Id.* at 48. After beginning her work with CCNH, Plaintiff became standoffish and withdrawn toward her father, such that Mr. Coit could

6

no longer kiss Plaintiff goodnight or be physically affectionate toward her. *Id.* Mr. Coit stated that Plaintiff still occasionally withdraws from his showings of physical affection. *Id.* at 49.

### *6. Collin Horak*

Plaintiff currently lives with Collin Horak and they have been dating for the past nine months. *Id.* at 51. Mr. Horak testified that Plaintiff has frequent nightmares, during which she talks in her sleep and violently thrashes about. *Id.* After these incidents, Plaintiff has difficulty talking about the nightmares. *Id.* at 52. According to Mr. Horak, Plaintiff is unable to engage in physical contact with him at least "a few times per week." *Id.*

### III.  DISCUSSION

In order to establish her entitlement to the damages claimed, Plaintiff was directed to submit a statement of amount due in default judgment pursuant to Local Rule 55.2(a). The Court also directed Plaintiff to submit a short memorandum that outlined her claimed damages after the inquest hearing. *See* T. at 54. Plaintiff's initial statement of amount due sought damages of $1,250,000, with $750,000 attributed to pain and suffering to date, and $500,000 for future pain and suffering. Dkt. No. 18-1. Plaintiff further sought attorney's fees for a contingency fee of 33.3% and costs and disbursements in the amount of $1,842.46. *Id.* Plaintiff's later memorandum on damages asked for an award of at least $3,000,000, including punitive damages. Dkt. No. 43 at 2.

**A.   Legal Standard**

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citation omitted). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (quotation omitted).

**B.     Compensatory Damages**

Title VII sets a cap on compensatory and punitive damages in cases of intentional employment discrimination, the amount of which depends upon the size of the employer. *See* 42 U.S.C. § 1981a(b)(3). However, "[P]laintiff is not precluded from also seeking compensatory damages under the NYHRL[,]" which has no maximum amount. *Walia v. Vivek Purmasir & Assocs., Inc.*, 160 F. Supp. 2d 380, 389 (E.D.N.Y. 2000) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975)) (other citations omitted). "The Court must award damages in an amount that will fairly and adequately compensate plaintiff for her physical and emotional suffering." *Amador v. Galbreath*, No. 10-CV-6702L, 2013 WL 1755784, *3 (W.D.N.Y. Apr. 24, 2013). Pain and suffering damages are "by their nature, not susceptible to mathematical computation. Consequently, the law does not provide a precise formula by which pain and

8

suffering and emotional distress may be properly measured and reduced to monetary value." *Byrnes v. Angevine*, No. 3:12-CV-1598, 2015 WL 3795807, *2 (N.D.N.Y. June 17, 2015) (citing *Mathie v. Fries*, 935 F. Supp. 1284, 1304-05 (E.D.N.Y. 1996), *aff'd* 121 F.3d 808 (2d Cir. 1997)) (other citation omitted). Therefore, appropriate compensatory awards should be made in "consideration of the amounts awarded in other, comparable cases." *Mathie*, 121 F.3d at 813 (citations omitted).

### *1. Non-Economic Damages*

The undisputed evidence in this case illustrates a myriad of grounds for Plaintiff to recover damages for her prolonged pain and suffering. Starting when she was sixteen years old, Plaintiff was locked in a closet, sexually assaulted, and raped by her forty-three year old coworker on a daily basis for a fourteen month period. Dkt. No. 1 at ¶¶ 10-13. Plaintiff was threatened and told that she could not report the criminal acts and that any harm to herself or others was entirely her fault. *Id.* at ¶ 14. These threats and continued abuse led Plaintiff to attempt suicide on January 22, 2009. *Id.* at ¶ 15. After this incident, CCNH was informed that its employee had sexually assaulted Plaintiff, yet told Plaintiff not to file a complaint and did nothing to remedy the situation. *Id.* at ¶ 17. Rather, Plaintiff's supervisor told Plaintiff that she should quit her job if she had a problem with her coworkers. *Id.* at ¶ 20.

This heinous course of conduct has manifested itself in several psychological and emotional conditions that Plaintiff has had to suffer through, and which will continue to burden her for the foreseeable future. Plaintiff struggles with depression and anxiety, she has recurrent nightmares which result in loss of sleep, she fears trusting her superiors in employment settings, she is unable to properly express her intimacy with others, especially males, and she struggles to effectively communicate with others. *See* T. at 8, 9, 10, 29, 41, 44, 49, 52. Plaintiff suffered from

a major depressive episode after being assaulted and continues to experience symptoms from PTSD. *Id.* at 18. The PTSD has the potential to be exacerbated by future triggers, which may require additional medical treatment and potentially lead to additional employment and relationship struggles. *Id.* at 19, 26. Ultimately, "[Plaintiff] was physically, psychologically, emotionally, socially, neurologically, occupationally and financially harmed by [CCNH's] actions. This harm will undoubtedly persist for years into her adulthood and will put her at risk for future complications for the course of her life." Pl. Exh. 3 at 3.

In calculating non-economic damages, the Court reviewed several cases with similar factual postures of ongoing sexual assault of a minor, inaction by employers to correct abusive work settings, and documented psychological conditions resulting from depression and PTSD. *See Grisanti v. Cioffi*, 38 Fed. Appx. 653, 656 (2d Cir. 2002) (affirming a $1.25 million award for a plaintiff who suffered four sexual assaults and numerous other threats over two years, which manifested in sleeplessness, nightmares, nausea, loss of appetite, depression, and crying); *see also Plaintiff, Pro Ami v. Hartford Roman Catholic Diocesan Corp.*, JVR No. 448172, 1000 WL 81699 (Unknown State Ct. (Conn.)) (Verdict and Settlement Summary) (settling for $1.6 million when a 15 year old boy was raped and sodomized by a priest, which resulted in the boy's inability to hold a job and sleep disturbances); *Doe v. Hartford Roman Catholic Diocesan Corp.*, 119 A.3d 462 (Conn. 2015) (affirming a $1 million award when a church refused to address complaints about a priest with a history of alcohol abuse, who then molested and sodomized a 13 year old boy); *Plaintiff, Pro Ami v. City of New York*, JVR No. 199537, 1997 WL 372823 (Sup. Ct. Kings Cnty. 1991) (settling for $1,168,200 when a 14 year old female was raped and sodomized by a volunteer of the defendant's school). In light of the awards in similar cases, the ongoing nature of the sexual assaults in this case, and the evidence of lasting psychological impairments, the Court

awards **$1,250,000.00** against Defendant CCNH in favor of Plaintiff for her past and future pain and suffering under her NYHRL claim.

### *2. Economic Damages*

Plaintiff was treated by Ms. Wood once per week for approximately three years. T. at 31-32. The typical hourly rate for someone of Ms. Wood's qualifications during that time period was between $50 and $90 per hour. *Id.* at 38. Thus, the Court awards Plaintiff $11,700 to compensate for her approximately 156 counseling sessions between 2009 and 2012 at a rate of $75 per hour.

Dr. Ginicola testified that Plaintiff likely needs an additional three or four years of counseling for her PTSD symptoms, and that her nightmares could continue for another ten years after that. *See id.* at 26-27. Further, Plaintiff's condition has the potential for resurgent symptoms, which would require additional counseling. *Id.* at 19-20. Dr. Ginicola's current counseling rates are between $125 and $150 per hour. *Id.* at 27. The Court awards Plaintiff $5,040 for 36 future counseling sessions, consisting of four visits annually during the next four years and two visits per year for the following ten years at a rate of $140 per hour. Therefore, the Court awards a total of **$16,740.00** against CCNH and in favor of Plaintiff for past and future medical costs under her NYHRL claim.

### *3. Costs and Attorney's Fees*

A prevailing plaintiff in a Title VII suit is entitled to recover reasonable attorney's fees and costs. 42 U.S.C. § 2000e–5(k). Generally, attorney's fees are calculated using the lodestar method by multiplying the number of hours spent by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The lodestar calculation

may be adjusted upward or downward in accordance with weighing several factors, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Luciano v. Olsten Corp.*, 925 F. Supp. 956, 962 (E.D.N.Y. 1996), *aff'd* 109 F.3d 111 (2d Cir. 1997) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 417-19 (5th Cir. 1974)). "Applications for fee awards must be documented by time records which specify the date, time expended, hourly rate, and description of the work done by each attorney." *Moore v. Houlihan's Rest., Inc.*, No. 07-CV-03129, 2011 WL 2470023, *7 (E.D.N.Y. May 10, 2011) (citing *Hensley*, 461 U.S. at 433) (other citation omitted).

Plaintiff seeks an award for costs and taxable disbursements in the amount of $2,423.44[2] and attorney's fees on a one-third contingency basis.[3] Dkt. No. 18-1 at ¶¶ 2, 3. Plaintiff submitted a statement and invoice that indicates a payment schedule as follows:

| | |
|---|---|
| $150.00 | consultation on 6/16/09 |
| $870.00 | time worked from 8/24/09 until 9/4/09 |
| $240.00 | time worked from 5/3/10 until 5/19/10 |
| $210.00 | filing fees for Courtland County on 3/08/11 |

---

[2] Plaintiff stated that the total costs amount to $1,842.46, but that number was Plaintiff's total amount due after deducting $581.00 for previous payments. The total amount of expenses listed on the invoice is $2,423.44. *See* Dkt. No. 18-2.

[3] While the NYHRL does not allow for an award of attorney's fees, Title VII allows such fees as part of the costs recoverable, which are not included in the statutory cap on damages. *See* 42 U.S.C. § 2000e–5(k).

12

|  |  |
|---|---|
| $68.00 | expenses for service of process on 3/24/11 |
| $16.02 | expenses for service of process on 3/24/11 |
| $869.44 | expenses from 3/25/11 until 11/18/13 |

Dkt. No. 18-2 at 2. This invoice indicates that $294.02 was spent on filing fees and service of process. However, the billing statement categorizes the remaining $2,129.42 as a consultation, time worked, or general expenses for a two-and-a-half year period. *See id.* The description of these charges indicates that they were for attorney's fees or unnamed general expenses, as opposed to other incidental costs of litigation. Thus, the Court grants Plaintiff an award of **$294.02** for costs and disbursements.

Plaintiff provides no evidence to support the assertion that her attorneys are entitled to an award of a one-third contingency fee. *See* Dkt. No. 18-1 at ¶ 2. Further, the existence of a one-third contingency fee agreement would not automatically entitle Plaintiff to recover such an award. *See Luciano*, 925 F. Supp. at 962. Rather, such an agreement would be one factor in favor of an upward adjustment to a reasonable award based on the lodestar calculation. *See id.* Without any documentation of this contingency agreement or the actual amount of time worked, the Court cannot grant Plaintiff's request for fees in the amount of one-third of the entire judgment, which would amount to approximately $429,000. *See Moore*, 2011 WL 2470023, at *7 (requiring the party seeking attorney's fees to provide specific documentation to support such award).

The only evidence presented concerning attorney's fees is a single page statement and invoice dated November 19, 2013, which indicates a charge of $2,129.42 for time billed, a consultation, and general expenses. *See* Dkt. No. 18-2 at 2. Plaintiff has failed to provide the required documentation to grant any award of attorney's fees because this statement and invoice does not list the hours spent on this case, the specific work performed, or the rate charged for the

attorney's services. *See id.*; *see also Moore*, 2011 WL 2470023, at *7. Thus, the Court conditionally denies Plaintiff's request for attorney's fees. Plaintiff may file an objection to this denial **within 14 days from the filing of this order** by submitting documentary evidence showing the amount of time spent on this case, the dates such work was completed, a specific description of the work performed, and the rates charged for such work.[4] If no objections are filed within 14 days, the denial of Plaintiff's request for attorney's fees will be final.

**C.     Punitive Damages**

"An award of punitive damages is warranted in a Title VII action where an employer discriminates 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp. 2d 555, 561 (S.D.N.Y. 2008) (quoting 42 U.S.C. § 1981a(b)(1)). Punitive damages are not available for employment discrimination under the NYHRL. N.Y. Exec. Law § 297(9) (limiting punitive damages to housing discrimination cases). Thus, punitive damages in this case are limited to the maximum damage cap for Title VII claims. The Court may grant "compensatory damages only under the [NY]HRL and punitive damages only under Title VII. Thus, . . . divid[ing] the award of compensatory and punitive damages between Title VII and the NYHRL in such a way as to maximize plaintiff's overall recovery." *Walia v. Vivek Purmasir & Assocs.*, 160 F. Supp. 2d 380, 391 (E.D.N.Y. 2000) (quotation omitted).

The amount of punitive damages should be based upon "(1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to compensatory damages, and (3) sanctions for comparable conduct." *Byrnes v. Angevine*, No. 3:12-CV-1598, 2015 WL 3795807,

---

[4] Plaintiff may also present any other evidence, such as a contingency fee agreement, that would warrant an upward adjustment to the award.

14

*7 (N.D.N.Y. June 17, 2015) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). However, "[a]wards of punitive damages are by nature speculative, arbitrary approximations. No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). Thus, the court's ultimate responsibility is to ensure that awards for punitive damages are "fair, reasonable, predictable, and proportionate." *Id.*

Title VII allows for a maximum recovery of $50,000 from employers who have "more than 14 and fewer than 101 employees in each of 20 or more calendar weeks" preceding the accrual of the Title VII claim. 42 U.S.C. § 1981a(b)(3)(A). Plaintiff has failed to submit evidence that CCNH employed more than 101 employees for the relevant time period.[5] The Court concludes that CCNH's reprehensible conduct of fostering a hostile and abusive work environment, disregarding Plaintiff's complaints of repeated sexual assault, and the constructive termination of Plaintiff warrants granting punitive damages to the maximum extent allowed.[6] *See, e.g.*, *Syrnik v. Polones Const. Corp.*, 918 F. Supp. 2d 262, 264-66 (S.D.N.Y. 2013) (awarding the maximum amount of punitive damages under Title VII when there was truly reprehensible conduct and the punitive award is not grossly disproportionate to compensatory damages). Therefore, the Court conditionally awards punitive damages in the amount **$50,000.00** against CCNH in favor of Plaintiff under her Title VII claim. Plaintiff may file an objection to this award **within 14 days from the filing of this order** by submitting documentary evidence to prove the

---

[5] It is undisputed that CCNH employed at least 15 employees during the relevant time period as evidenced by the Equal Employment Opportunity Commission's letter stating that CCNH was in violation of Title VII, which only applies to employers with at least 15 employees. *See* Dkt. No. 1 at 99; *see also* 42 U.S.C. § 2000e(b).

[6] While the Court would ordinarily hold a hearing to determine appropriate punitive damages, such procedure would be futile in light of Defendant's repeated failure to appear.

number of CCNH's employees during the relevant time period, or by presenting the Court with a reasonable argument for granting additional time to furnish such information. If no objections are filed within 14 days, Plaintiff's award of $50,000.00 in punitive damages will be final.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Clerk enter judgment against CCNH in the amount of **$1,267,034.02**, representing **$1,266,740.00** in compensatory damages and **$294.02** in costs and disbursements; and the Court further

**ORDERS** that the Clerk enter a conditional judgment against CCNH in the amount of **$50,000.00** in punitive damages, pending objections from Plaintiff **within 14 days from filing this order**; and the Court further

**ORDERS** that Plaintiff's request for attorney's fees is conditionally **DENIED**, pending objections from Plaintiff **within 14 days from filing this order**; and the Court further

**ORDERS** that the Clerk of the Court shall close this case in 14 days if no objections are filed; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 16, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge